**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALISON MYERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:08-cv-03619 |
| | ) | |
| BP AMERICA, INC. and BP PRODUCTS | ) | Judge Matthew Kennelly |
| NORTH AMERICA, INC., | ) | Magistrate Judge Arlander Keys |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' ANSWER AND
<u>AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT</u>**

DEFENDANTS, BP AMERICA INC. ("BP America") and BP PRODUCTS NORTH

AMERICA INC. ("BP Products," both entities collectively referred to as "Defendants"),

pursuant to Federal Rules of Civil Procedure 8(b) and 12(a), answer Plaintiff's Complaint as

follows:

**NATURE OF THIS ACTION**

<u>**COMPLAINT ¶ 1:**</u>

This is an action against Defendants for sex discrimination and retaliation in violation of
the Title VII of the Civil Rights Act of 1964 42 U.S.C.S. §2000(e) *et seq*.; violation of the Equal
Pay Act 29 U.S.C.S. §201 *et seq*.; and breaches of contracts.

<u>**ANSWER:**</u>

Defendants admit that Paragraph 1 purports to describe the nature of Plaintiff's claims,

but deny that they have violated the cited laws or any other laws, or breached any contracts.

**PARTIES**

<u>**COMPLAINT ¶ 2:**</u>

Plaintiff, Alison Myers, is an Irish citizen and permanent resident of the United States
residing in Cook County Illinois.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 2.

**COMPLAINT ¶ 3:**

BP Products is a Maryland corporation that is authorized to transact business in Illinois
and maintains an office in DuPage County, Illinois at 28100 Torch Parkway, Warrenville 60555.

**ANSWER:**

Defendants admit the allegations contained in Paragraph 3.

**COMPLAINT ¶ 4:**

BP America is a Delaware corporation that is authorized to transact business in Illinois
and maintains its principal office in DuPage County, Illinois at 28100 Torch Parkway,
Warrenville 60555.

**ANSWER:**

Defendants admit that BP America is a Delaware corporation that is authorized to

transact business in Illinois and maintains its principal office in DuPage County, Illinois.

Defendants deny the remaining allegations contained in Paragraph 4.

**JURISDICTION AND ADMINISTRATIVE COMPLIANCE**

**COMPLAINT ¶ 5:**

This action arises under the laws of the United States, specifically Title VII of the Civil
Rights Act of 1964 42 U.S.C.S. §2000(e) *et seq.* and the Equal Pay Act 29 U.S.C.S. §201 *et seq.*

**ANSWER:**

Defendants admit that Plaintiff purports to bring this action under Title VII and the Equal

Pay Act, but denies that they have violated these or any other statutes.

**COMPLAINT ¶ 6:**

This Court has jurisdiction over this entire action pursuant to 28 U.S.C. §1331, 28 U.S.C.
§1343(a)(3), and 42 U.S.C. §2000e-5(f)(3) because this is a civil action with claims arising under
the laws of the United States, and because all of the other claims included in the Complaint are

so related to the federal claims within this Court's original jurisdiction that they form part of the same case or controversy pursuant to 28 U.S.C. §1367.

**ANSWER:**

Defendants admit the allegations contained in Paragraph 6, but deny that they have

engaged in any unlawful act.

**COMPLAINT ¶ 7:**

Venue is proper in this Court because Defendants operate offices in this District, specifically in DuPage County, Illinois and the activities that gave rise to the claims contained in this Complaint occurred in this District.

**ANSWER:**

Defendants admit the allegations contained in Paragraph 7, but deny that they have

engaged in any unlawful act.

**COMPLAINT ¶ 8:**

On October 29, 2007 Ms. Myers filed a charge of discrimination with United States Equal Employment Opportunity Commission ("EEOC") against "British Petroleum Products North America, Inc." asserting the acts of discrimination alleged in this Complaint. (A true and correct copy of the Charge of Discrimination and Bill of Particulars is attached as Exhibit A).

**ANSWER:**

Defendants admit that there exists a charge of discrimination dated October 29, 2007,

purportedly filed by Plaintiff with the EEOC against British Petroleum Products North America,

Inc. asserting some of the acts of discrimination alleged in the Complaint. Defendants further

admit that a copy of the charge is attached to the Complaint as Exhibit A. Defendants deny that

the charge asserts all of the acts of discrimination alleged in the Complaint. Defendants are

without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations contained in Paragraph 8.

**COMPLAINT ¶ 9:**

On April 28, 2008 Ms. Myers filed an Amended Charge of Discrimination with the EEOC amending the charge to name "BP Products of North America, Inc." and "BP America,

3

Inc." (A true and correct copy of the Amended Charge of Discrimination and Bill of Particulars is attached as Exhibit B).

**ANSWER:**

Defendants admit that there exists an amended charge of discrimination dated April 23, 2008, purportedly filed by Plaintiff with the EEOC against BP Products of North America, Inc. and BP America, Inc., a copy of which is attached to the Complaint as Exhibit B. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 9.

**COMPLAINT ¶ 10:**

On June 10, 2008 the EEOC issued a Notice of Right to Sue, which was received by Ms. Myers on June 16, 2008. (A true and correct copy of the Notice of Right to Sue is attached as Exhibit C).

**ANSWER:**

Defendants admit that there exists a Notice of Right to Sue dated June 10, 2008, purportedly issued by the EEOC, a copy of which is attached to the Complaint as Exhibit C. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 10.

## FACTS COMMON TO ALL COUNTS

**A.      Ms. Myers Shows Early Signs Of Promise While Working For BP**

**COMPLAINT ¶ 11:**

On November 11, 1996 Ms. Myers began working for BP p.l.c. ("BP") as an Operator at BP's London headquarters. An Operator is essentially a scheduler for the shipments of petroleum products BP buys and sells on a recurring basis.

**ANSWER:**

Defendants admit the allegations contained in Paragraph 11.

**COMPLAINT ¶ 12:**

On January 8, 1998 BP appointed Ms. Myers to the position of Western Crude Oil Trader which became effective on March 1, 1998.

**ANSWER:**

Defendants admit the allegations contained in Paragraph 12.

**COMPLAINT ¶ 13:**

The term "trader" within the BP organization means an agent of BP who buys and sells a product in order to maximize profits on BP's resources.

**ANSWER:**

Defendants admit that Paragraph 13 generally describes the trader position, but denies

that the definition encompasses all of a trader's job responsibilities.

**COMPLAINT ¶ 14:**

"Book", "Book Leader" and "Co-Book Leader" are all terms used within the BP organization. Defendants use the term "Book" to refer to a list of all current trading positions and other information related to each particular trading group. Trading groups are referred to, within the BP organization, as "benches". Defendants use the term "Book Leader" and "Co-Book" leader to refer to the heads or co-heads of any particular Book.

**ANSWER:**

Defendants admit that "book" and "book leader" are terms used within the BP

organization and that "book leader" refers to the person with primary responsibility for a

particular book. Defendants deny the remaining allegations contained in Paragraph 14.

**COMPLAINT ¶ 15:**

On July 8, 1999 BP promoted Ms. Myers to the position of Senior Crude Oil Trader. This employment relationship was memorialized in an employment agreement called a Trader Fixed Term Employment Contract. This Fixed Term Employment Contract expired automatically, by its own terms, on December 31, 2000.

**ANSWER:**

Defendants admit that Plaintiff entered into an agreement entitled Trader Fixed Term

Employment Contract. Defendants deny the remaining allegations contained in Paragraph 15.

**B.     Ms. Myers' Performance Increases Dramatically While Defendants Discriminatory Practices Come To Light**

**COMPLAINT ¶ 16:**

In September of 2000 BP transferred Ms. Myers to its Warrenville, Illinois office.  In Illinois she continued to work as a crude oil trader as a member of the West African Crude Oil Bench which is known colloquially within the BP organization as the "WAF" Crude Oil Bench ("WAF Bench").

**ANSWER:**

Defendants admit that in September 2000, Plaintiff accepted an international assignment

and transferred to Defendants' Warrenville, Illinois office.  Defendants further admit that

Plaintiff continued to work as a crude oil trader for the West African Crude Oil Bench, known as

the "WAF" Crude Oil Bench.

**COMPLAINT ¶ 17:**

From 2001-2002, there were three members on the WAF Bench: Ms. Myers, who was a senior trader, a male trader junior to Ms. Myers and a male Book Leader, who was Ms. Myers' supervisor.

**ANSWER:**

Defendants admit that from 2001 to 2002, there were three members on the WAF Bench:

Plaintiff and two male traders.  Defendants deny the remaining allegations contained in

Paragraph 17.

**COMPLAINT ¶ 18:**

In 2003 the male WAF Book Leader was promoted to the position of Book Leader for the "Cushing Book."  The Cushing Book is the most profitable crude book in the BP organization. At this time Ms. Myers began working as the WAF "Co-Book Leader".

**ANSWER:**

Defendants admit that in 2003, a male trader from the WAF Book was promoted to the

Cushing Book Leader position.  Defendants further admit that the Cushing Book at that time was

the most profitable crude book in the BP organization.  Defendants deny the remaining

allegations contained in Paragraph 18.

**COMPLAINT ¶ 19:**

In 2005 Ms. Myers became the sole WAF Book Leader.

**ANSWER:**

Defendants admit the allegations contained in Paragraph 19.

**COMPLAINT ¶ 20:**

As the WAF Book Leader, Ms. Myers led a team of five traders, including herself. Ms. Myers and one male trader were located in the United States and the three other traders, two males (one of which had worked in the U.S. office until September of 2006) and one female, on the WAF Bench were located in the United Kingdom.

**ANSWER:**

Defendants admit that on the WAF Bench, Plaintiff and one male trader were located in

the United States and three traders (two male and one female) were located in the United

Kingdom.  Defendants deny the remaining allegations contained in Paragraph 20.

**COMPLAINT ¶ 21:**

During the years Ms. Myers worked in the Warrenville Illinois office, Ms. Myers' performance results steadily increased as did her monetary compensation.

**ANSWER:**

Defendants admit that during the time Plaintiff worked in the Warrenville, Illinois office,

her monetary compensation steadily increased.  Defendants deny the remaining allegations

contained in Paragraph 21.

**COMPLAINT ¶ 22:**

The total monetary compensation for traders and Book Leaders is made up of two components: An annual salary and a performance based yearly bonus.  The salary is paid periodically throughout the year.  The bonuses are calculated at the end of each calendar year and are based on both objective and subjective factors.  The objective portion of the bonus is based on the performance of the trader's or Book Leader's respective Book.  For example, everyone on the WAF Bench, the traders and Ms. Myers as the Book Leader, all received

bonuses based on the total monetary performance of the WAF Book. For each Book, Defendants set certain "benchmarks", essentially monetary reference points; in order to determine the Book's performance. These benchmarks are generally reviewed and/or adjusted on a yearly basis. The subjective portion of the annual performance based bonus is based on what Defendants termed "soft issues". The "soft issues" portion covers, in part, the employee's behavior, attitude, and whether they adhere to Defendants' policies.

**ANSWER:**

Defendants deny that the subjective portion of the annual performance based bonus is

referred to as "soft issues," such as an employee's behavior, attitude or whether they adhere to

Defendants' policies. Defendants admit the remaining allegations contained in Paragraph 22.

**COMPLAINT ¶ 23:**

Every year as a trader, Co-book Leader and as the WAF Book Leader, Ms. Myers received 100% of the bonus amounts based on these "soft issues". For the 2006 performance year, Ms. Myers' immediate supervisor told her that she had met all of the "soft issue" objectives for 2006 also.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 23.

**COMPLAINT ¶ 24:**

In 2005 Defendants instituted a "bonus retention program" that applied to traders and other highly compensated employees. The program entailed Defendants retaining a portion of the employee's earned bonus which Defendants would then pay out over the following three years. Since 2005 the retention program applied to employees whose target bonus was $200,000 or greater. If an employee was subject to the bonus retention program, seventy-five percent (75%) of that employee's bonus earned in any given year would be paid to the employee no later than three months following the end of that year. The remaining twenty-five percent (25%) would be paid out in three equal payments over the following three years with an extra payment in the final year (25% of the total retained amount) to account for the time value of the money that was retained. BP has retained money which Ms. Myers earned in the years 2005 and 2006.

**ANSWER:**

Defendants admit that in 2005, it instituted a "bonus retention program" that applied to

traders and other highly compensated employees whose target bonus was $200,000 or greater.

Defendants further admit that pursuant to the specific conditions under the bonus retention

program, twenty-five percent (25%) of the bonus is earned and paid out in three equal payments

over the following three years with an extra payment in the final year (25% of the total retained amount).  Defendants deny the remaining allegations contained in Paragraph 24.

## COMPLAINT ¶ 25:

Between 2003 and 2006, Ms. Myers' performance as, first, a Co-Book Leader, then later, as the WAF Book Leader, improved dramatically by all objective indicators, as evidenced by her compensation for those years.  Specifically Ms. Myers' bonus compensation increased as follows:

     a.     2004 bonus compensation increased 32.01% from the prior year;

     b.     2005 bonus compensation increased 75.09% from the prior year;

     c.     2006 bonus compensation increased 105.17% from the prior year.

## ANSWER:

Defendants admit that Plaintiff's 2004 bonus compensation was approximately 32.01% more than her 2003 bonus compensation.  Defendants further admit that Plaintiff's 2005 bonus compensation was approximately 75.09% more than her 2004 bonus compensation.  Defendants deny the remaining allegations contained in Paragraph 25.

## C.    Defendants' Promotional Policies Discriminate Against Ms. Myers

## COMPLAINT ¶ 26:

While Ms. Myers was the WAF Co-Book Leader, the previous male WAF Book Leader, who had been promoted to the position of Cushing Book Leader, left the BP organization, leaving the position of Cushing Book Leader open.

## ANSWER:

Defendants admit that the Cushing Book Leader left BP Products North America, leaving the Cushing Book Leader position open.  Defendants deny the remaining allegations contained in Paragraph 26.

## COMPLAINT ¶ 27:

On information and belief, Defendants' policies and procedures require related companies within the BP organization to hold open interviewing for current employees wanting to interview for an open position.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 27.

**COMPLAINT ¶ 28:**

Ms. Myers, who was a prime candidate to succeed in the position of Cushing Book Leader, was not informed of the open position nor was she allowed to interview for the open position.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 28.

**COMPLAINT ¶ 29:**

On information and belief, without holding open interviewing, Defendants quickly appointed a male, junior in trading status to Ms. Myers, to the position of Cushing Book Leader instead of Ms. Myers.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 29.

**COMPLAINT ¶ 30:**

Ms. Myers confronted her superior about Defendants' deviation from its policies and procedures that require open interviewing.  Ms. Myers was told that she should "just support [the new, male Cushing Book Leader]" because "she was getting paid a lot of money" in her current position.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 30.

**COMPLAINT ¶ 31:**

On information and belief, this inexplicable and discriminatory promotion violated Defendants internal policies and procedures that govern promoting from within the BP organization.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 31.

**D.      Defendants' Subjective Bonus Deduction Discriminates Against Ms. Myers**

**COMPLAINT ¶ 32:**

For the 2006 performance year, based on the overall monetary performance of the WAF Book and the benchmarks set for the WAF Book in her 2006 Performance Contract, Ms. Myers earned a bonus in excess $5.5 million payable in March 2007 subject to the "bonus retention program." This bonus was in addition to Ms. Myers' salary. Ms. Myers' salary for 2006 started at $121,000 and increased to $150,000 on April 1, 2006. In 2007 Ms. Myers' salary increased to $163,500.

**ANSWER:**

Defendants admit that Plaintiff's discretionary performance bonus for 2006 was in

addition to her salary. Defendants deny the remaining allegations contained in Paragraph 32.

**COMPLAINT ¶ 33:**

Ms. Myers was entitled to receive the full amount of her 2006 performance bonus with the appropriate portion to be held pursuant to the bonus retention program given that she had not been told at any time throughout the year by management that issues existed with respect to any "soft issues" that could affect her bonus. To the contrary, management verbally praised Ms. Myers' leadership of her team and reassured her on several occasions throughout 2006 that none of her "soft issues" were being questioned.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 33.

**COMPLAINT ¶ 34:**

Ms Myers' bonus, according to her 2006 Performance Contract, was to be paid out in March of 2007, with approximately $1.3 million (25%) to be retained by Defendants pursuant to the "bonus retention program."

**ANSWER:**

Defendants deny the allegations contained in Paragraph 34.

**COMPLAINT ¶ 35:**

On March 7, 2007, just days before Defendants were scheduled to pay the bonuses, Defendants told Ms. Myers that they had decided to unilaterally and retroactively change the 2006 WAF Book benchmarks. This retroactive change in the benchmarks for 2006 excluded approximately $14,724,078.00 from the WAF Book's performance. This exclusion, in turn, resulted in deduction of $776,720 from Ms. Myers' 2006 bonus.

**ANSWER:**

Defendants admit that on March 7, 2007, they communicated to Plaintiff a change in the

2006 WAF Book benchmarks.  Defendants further admit that the change in the benchmarks

affected the WAF Book performance by approximately $14,724,078.00.  Defendants deny the

remaining allegations contained in Paragraph 35.

**COMPLAINT ¶ 36:**

This retroactive benchmark change presented two major wrongs.  First, the fact that
Defendants retroactively changed the benchmarks in and of itself was wrong.  The WAF Book
benchmarks had not changed since 2005.  Defendants knew the benchmarks had not been
changed for 2006 because the benchmarks are set by Defendants.  Defendants, the employees
who receive bonuses based on the benchmarks for their respective Book, and Ms. Myers all
specifically rely on the benchmarks set each year when setting performance goals for the books.
Even after altering the performance benchmarks for the purposes of calculating Ms. Myers'
bonus, as of July 2007 Defendants had not altered the WAF Book benchmarks for anyone else
on the WAF Bench or for the WAF Book.

**ANSWER:**

Defendants admit that the WAF Book benchmarks, which are set by Defendants, had not

changed since 2005.  Defendants further admit that the benchmarks are considered when setting

performance goals for the books.  Defendants deny the remaining allegations contained in

Paragraph 36.

**COMPLAINT ¶ 37:**

The second wrong with respect to the benchmarks is that Defendants retroactively
changed the WAF Book's performance benchmarks *only when calculating Ms. Myers'* 2006
bonus.  Defendants used the previously established benchmarks for the purposes of determining
the WAF Book's performance for all of the other members of the WAF Book Bench.
Defendants provided no explanation why they discriminated against Ms. Myers in this way.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 37.

**COMPLAINT ¶ 38:**

Throughout 2005 and 2006 the WAF Book's benchmarks were common knowledge and
were frequently discussed as well as the effect the benchmarks would have on the year-end

performance calculation for the WAF Book.  At no time did Defendants tell Ms. Myers that they planned on or intended to change the WAF Book's benchmarks.

**ANSWER:**

Defendants admit that in 2005 and 2006, the WAF Book benchmarks were known and

discussed in connection with year-end performance calculations.  Defendants deny the remaining

allegations contained in Paragraph 38.

**COMPLAINT ¶ 39:**

The WAF Book's benchmarks were never changed, at any time, throughout 2006.  Only after December 31, 2006, after Defendants received the benefits of Ms. Myers efforts, when Ms. Myers bonus was being calculated, did Defendants retroactively decide that the WAF Book benchmarks needed to be revised.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 39.

**COMPLAINT ¶ 40:**

Defendants retroactively changed the benchmarks only for the purpose of calculating the WAF Book's performance for Ms. Myers' bonus, but not for any other member of the U.S. WAF Bench, all of whom were males.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 40.

**COMPLAINT ¶ 41:**

On March 8, 2007 Ms. Myers questioned Defendants' decision to retroactively change the benchmarks for the WAF Book.  (See the email from Alison Myers to Andy Milnes, dated March 8, 2007 ("March 8th Email") attached as Exhibit D).  Ms. Myers met with Defendants' management regarding its discriminatory decision to retroactively change the benchmarks. Ms. Myers' was told only that Defendants' deduction was warranted because, ultimately, they were paying her "what she was worth."

**ANSWER:**

Defendants admit that on March 8, 2007, Plaintiff sent an email to Andy Milnes (attached

as Exhibit D).  Defendants further admit that Plaintiff met with members of management to

discuss the change in the benchmarks for the WAF Book.  Defendants deny the remaining

allegations contained in Paragraph 41.

**COMPLAINT ¶ 42:**

On information and belief, the arbitrary nature of Defendants' determination to retroactively change the WAF Book's benchmarks only for the purpose of calculating Ms. Myers' 2006 bonus is evidenced first by the fact that Defendants did not retroactively change the benchmarks for the purpose of calculating the male WAF Book traders' bonuses; and second by never retroactively changing the benchmarks for other Books within the BP organization, or to reduce the male book leaders' bonuses; and third by not reducing Ms. Myers 2005 bonus although the same benchmarks were used throughout 2005 and when calculating the performance of the WAF Book in 2005.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 42.

**COMPLAINT ¶ 43:**

Defendants singled out Ms. Myers for the retroactive benchmark change and selectively reduced her 2006 bonus solely because she is a woman.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 43.

**COMPLAINT ¶ 44:**

Defendants discriminated against Ms. Myers because she is a woman in other ways as well.  As of July 2007, Ms. Myers was the only female Book Leader at BP Products.  Ms. Myers' compensation, including bonus, was substantially less than the other male Book Leaders employed by Defendants.  On information and belief, Defendants paid the other Book Leaders, all of whom were male, significantly more than the amount Defendants paid Ms. Myers even though other books were neither substantially more qualitatively or quantitatively different than the WAF Book that Ms. Myers led.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 44.

**D.[sic]  Defendants' Discrimination Continues When They Retaliate Against Ms. Myers**

**COMPLAINT ¶ 45:**

In April of 2007, in retaliation against Ms. Myers' challenging the discriminatory way Defendants retroactively changed the WAF Book's performance benchmarks and subsequently

14

doctored her 2006 bonus calculation, Defendants gave Ms. Myers an unfavorable first quarter review, based not on any objective performance standards but on what Defendants termed "behavior" issues.  This review was a sham and contradicted prior reviews and comments Ms. Myers received on her performance.  Just a few weeks earlier, when Ms. Myers' 2007 Performance Contract was negotiated and executed, and her 2006 bonus was being discussed Ms. Myers received favorable feedback regarding her behavior.

**ANSWER:**

Defendants admit that in April 2007, it gave Plaintiff a first quarter review which cited

Plaintiff's "behavior" issues.  Defendants deny the remaining allegations contained in Paragraph

45.

**COMPLAINT ¶ 46:**

Moreover, in the same month of this unfavorable review, April of 2007, Defendants rewarded Ms. Myers' for her "excellent" performance (see a true and correct copy of the Reward Letter dated April 13, 2007 attached as Exhibit E).

**ANSWER:**

Defendants admit that on April 13, 2007, Earl Burns commended Plaintiff for the

"excellent job" she did in describing book activities at two meetings.  Defendants further admit

that a copy of the letter is attached to the Complaint as Exhibit E.  Defendants deny the

remaining allegations contained in Paragraph 46.

**COMPLAINT ¶ 47:**

At all times while employed by Defendants, first as a trader, and then as the WAF Book Leader, Ms. Myers surpassed Defendants' performance benchmarks every year and in each and every respect.  While employed at Defendant companies, Ms. Myers consistently received praise and positive feedback regarding her job performance from her superiors and Co-workers.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a basis as to the truth

of Plaintiff's statement that she received praise and positive feedback from her "co-workers."

Defendants deny the remaining allegations contained in Paragraph 47.

**COMPLAINT ¶ 48:**

The quarterly review Ms. Myers received in May of 2007 was only the second formal written review she received in the entire nine-year span that she worked for Defendants as a trader.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 48.

**COMPLAINT ¶ 49:**

Defendants' unfavorable first quarter 2007 review of Ms. Myers was a pretext, as evidenced by the fact that male members of the WAF Bench and other male Book Leaders were not given unfavorable reviews despite the males engaging in the same, and often times worse; "behaviors" Defendants attempted to attribute to Ms. Myers.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 49.

**COMPLAINT ¶ 50:**

During a meeting on July 10, 2007 (the "July 10th Meeting"), Defendants further retaliated against Ms. Myers.  Ms. Myers' immediate supervisor invited her to this meeting to review operational items but instead ambushed Ms. Myers with a meeting that included three of her superiors and a member of Defendants human resources department.  The true purpose of this meeting, as detailed below, was in fact to (1) punish Ms. Myers' challenges to Defendants' discriminatory policies, including her own 2006 bonus calculation; (2) prevent Ms. Myers from earning any future bonuses or collecting retained bonus amounts; and (3) prevent Ms. Myers from continuing, in any meaningful employment capacity, with the BP organization.

**ANSWER:**

Defendants admit that on July 10, 2007, a meeting was held with Plaintiff, three of her

superiors and a member of human resources.  Defendants deny the remaining allegations

contained in Paragraph 50.

**COMPLAINT ¶ 51:**

At this July 10th Meeting Defendants placed Ms. Myers on what Defendants refer to as "garden leave".  This "garden leave" status stripped Ms. Myers of all of her job responsibilities, precluded Ms. Myers from continuing in her capacity as the WAF Book Leader (consequently freezing her out of any opportunity to continue to earn and receive a bonus for 2007), prevented Ms. Myers from assuming any other position within the larger BP organization, and search for other employment opportunities outside of the BP organization.  On information and belief,

Defendants have has [sic] never treated a male employee, and particularly not a male Book Leader, placed on "garden leave" in this manner and without any warning or notice.

**ANSWER:**

Defendants admit that in the July 10th Meeting, they placed Plaintiff on "garden leave," which removed Plaintiff's responsibilities as WAF Book Leader. Defendants further admit that during Plaintiff's garden leave, she was not permitted to perform work for Defendants or work for any third party. Defendants deny the remaining allegations contained in Paragraph 51.

**COMPLAINT ¶ 52:**

Also at the July 10th Meeting Defendants demanded that Ms. Myers be repatriated back to the United Kingdom before October 8, 2007. On information and belief, Defendants do not repatriate fixed term contract traders until their Performance Contracts expire unless both parties agree to do so or the employee requests repatriation. Ms. Myers' Performance Contract was not scheduled to expire until December 31, 2007.

**ANSWER:**

Defendants admit that at the July 10th Meeting, they informed Plaintiff that she needed to repatriate back to the United Kingdom by October 10, 2007. Defendants deny the remaining allegations contained in Paragraph 52.

**COMPLAINT ¶ 53:**

Defendants' demand that Ms. Myers be repatriated before her 2007 Performance Contract [sic] breached the Performance Contract and constituted discrimination and retaliation. Defendants' attempt to repatriate Ms. Myers in the middle of her Performance Contract was motivated by Defendants' desire to discriminate against Ms. Myers based on the fact that she is a female and challenged Defendants' discriminatory employment practices.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 53.

**COMPLAINT ¶ 54:**

In the July 10th Meeting, Defendants promised that during the three month "garden leave" period, BP would provide Ms. Myers access to BP's internal job bank so that she could to [sic] seek employment within the BP organization in the United Kingdom. Despite repeated requests from Ms. Myers for the necessary information to access BP's internal job bank, BP did not contact Ms. Myers until the end of August of 2007.

**ANSWER:**

Defendants admit that in the July 10th Meeting, they told Plaintiff that during her garden leave, she would have access to Defendants' internal job bank so that she could seek employment within the BP organization in the United Kingdom.  Defendants deny the remaining allegations contained in Paragraph 54.

**COMPLAINT ¶ 55:**

Immediately following the July 10, 2007 Meeting, Defendants expressly forbade Ms. Myers from returning to her desk to collect her personal items, forbade her from contacting any of the WAF team members and any other employees of Defendants, and then demanded that Ms. Myers be escorted out of the building, through the fire escape, as though she were a criminal.  On information and belief, Defendants have never treated a male employee placed on "garden leave" in this manner.

**ANSWER:**

Defendants admit that immediately following the July 10th Meeting, Plaintiff was asked to not contact the WAF team members or other of Defendants' employees for business related reasons.  Defendants deny the remaining allegations contained in Paragraph 55.

**COMPLAINT ¶ 56:**

Defendants also immediately required Ms. Myers' team and broader trading and support groups to cease any and all communications with her, and further required that if Ms. Myers tried to get in contact with them, they should report this to their line managers immediately.  None of these mandates are typical of Defendants' repatriation process and, on information and belief, have never been instituted with respect to any male employees who were repatriated.

**ANSWER:**

Defendants admit that they required Plaintiff's WAF team and support groups to cease all business communications with Plaintiff.  Defendants deny the remaining allegations contained in Paragraph 56.

**COMPLAINT ¶ 57:**

Not only did Defendants' actions in the July 10th Meeting preclude Ms. Myers from earning a performance bonus for the second half of 2007, Defendants refused, and continue to refuse, to compensate Ms. Myers for the bonus she earned during the first half of 2007.  As of

July 10, 2007, the WAF Book was on track to at least meet, and in all likelihood exceed, the performance benchmarks reached in 2006. Thus, Ms. Myers' bonus, which Defendants refuse to pay, would have amounted to at least $5.5 million for 2007, at least a substantial portion of which Ms. Myers already earned between January and July 2007. Defendants also refuse to pay Ms. Myers over $2.1 million in retained bonus earnings from 2005 and 2006.

**ANSWER:**

Defendants admit that Plaintiff was not eligible to receive a performance bonus as a Book

Lead for the second half of 2007. Defendants deny the remaining allegations contained in

Paragraph 57.

**COMPLAINT ¶ 58:**

Moreover, because the July 10th Meeting was so sudden, unexpected and shrouded in secrecy, Ms. Myers' colleagues, team members, trading partners and others involved in the crude oil market were left speculating the reason for Ms. Myers [sic] departure from Defendant companies. This has cast a pall over Ms. Myers [sic] reputation within the industry in which Ms. Myers' [sic] has operated in for the past 12 years.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 58.

**COMPLAINT ¶ 59:**

Potentially, the speculation from the market and the companies regularly involved in the crude oil market could substantially decrease Ms. Myers [sic] future earning capacity.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 59.

**COMPLAINT ¶ 60:**

On information and belief, Defendants have paid out the retained amounts for males that have left their employment at Defendant [sic] companies, even when the departing employee received official, documented, complaints about their behavior.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 60.

**COMPLAINT ¶ 61:**

After being placed on "garden leave" Ms. Myers informed Defendants that she continued to be ready, willing and able to perform all of her job duties as the WAF Book Leader through at least December 31, 2007 if not longer, and that she did not believe Defendants' demand for her repatriation during the middle of her 2007 Performance Contract was justified, either factually or legally.

**ANSWER:**

Defendants admit that after Plaintiff was placed on garden leave, she informed

Defendants that she was ready, willing and able to perform her job duties as WAF Book Leader

at least through December 31, 2007 if not longer.  Defendants also admit that Plaintiff expressed

her belief that her repatriation was not justified.  Defendants deny the remaining allegations

contained in Paragraph 61.

**COMPLAINT ¶ 62:**

Even though Ms. Myers informed Defendants that she continued to be ready, willing and able to perform all of her job duties as the WAF Book Leader through at least December 31, 2007 if not longer, Defendants again retaliated against Ms. Myers by terminating her employment on October 18, 2007 and continuing to refuse to allow Ms. Myers to continue in her role as WAF Book Leader or pay any of the bonus monies she was owed.  On information and belief Defendants have never treated any fixed term contract male traders similarly to the way it treated Ms. Myers.

**ANSWER:**

Defendants admit that on October 18, 2007, Plaintiff's employment was terminated in the

United Kingdom.  Defendants deny the remaining allegations contained in Paragraph 62.

**COMPLAINT ¶ 63:**

On information and belief, Defendants replaced Ms. Myers as the WAF Book Leader with a male who was less qualified, with less recent market experience in crude oil and less experience with WAF trading specifically.  Defendants wanted to replace Ms. Myers because she is a woman and voiced her objections to Defendants' discriminatory practices.

**ANSWER:**

Defendants admit that Plaintiff's replacement as WAF Book Leader is male.  Defendants

deny the remaining allegations contained in Paragraph 63.

**COMPLAINT ¶ 64:**

On information and belief, Defendants' activities described above, specifically its review of Ms. Myers in April of 2007, its placing her on "garden leave" in July of 2007 and its terminating her in October of 2007 were all pretexts for Defendants' true goal, which was to punish Ms. Myers for challenging Defendants' discriminatory practices, including the manner in which Defendants promoted, compensated, disciplined and repatriated Ms. Myers as a female employee.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 64.

**COUNT I**
**SEX DISCRIMINATION IN VIOLATION OF TITLE VII**
**OF THE CIVIL RIGHTS ACT OF 1964—29 U.S.C. §2000e,** *et seq.*

**COMPLAINT ¶ 65:**

Ms. Myers adopts and incorporates by reference all allegations contained in ¶¶ 1-64 as if set forth herein.

**ANSWER:**

Defendants restate and reallege their answers to Paragraphs 1-64 as if set forth herein.

**COMPLAINT ¶ 66:**

Title VII prohibits employers from, among other things, discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of an individual's race, color, religion, sex, or national origin.

**ANSWER:**

Defendants admit the allegations contained in Paragraph 66, but deny that they violated

Title VII or any other statute.

**COMPLAINT ¶ 67:**

Ms. Myers, a female, falls within a class protected by Title VII.

**ANSWER:**

Defendants admit the allegation contained in Paragraph 67.

**COMPLAINT ¶ 68:**

Title VII §2000e(a) defines and "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person."

**ANSWER:**

Defendants admit the allegations contained in Paragraph 68.

**COMPLAINT ¶ 69:**

Defendants qualify as "employers" under the Title VII definition.

**ANSWER:**

Defendants admit the allegations contained in Paragraph 69.

**COMPLAINT ¶ 70:**

Ms. Myers was meeting Defendants' business expectations as demonstrated by:

a.     Her long-term employment with Defendants; Ms. Myers worked for BP and its affiliates for approximately eleven years;

b.     Her positive reviews from her superiors, the sole exception occurring after she voiced her opinion regarding the discriminatory manner in which Defendants retroactively changed the performance benchmarks for the WAF Book and used the doctored calculations only to reduce Ms. Myers' 2006 bonus;

c.     Her unblemished history of receiving 100% of all bonus payouts for every performance year before the 2006 performance year even though Defendants reserved the right to deduct bonus monies because of behavioral issues;

d.     Her exemplary performance both as a trader and the WAF Book Leader, at all times while employed by Defendants in either capacity, she surpassed Defendants' performance benchmarks every year;

**ANSWER:**

Defendants admit that Plaintiff worked for BP and its affiliates for approximately eleven years.  Defendants deny the remaining allegations contained in Paragraph 70.

**COMPLAINT ¶ 71:**

Ms. Myers suffered adverse employment actions when Defendants took the following actions:

a.      singling out Ms. Myers for bonus reduction in 2006 of $776,720 based on Defendants' retroactive change of the performance benchmarks for the WAF Book;

b.      retaliating against Ms. Myers for challenging the discriminatory retroactive benchmark changes and subsequent application of the modified benchmarks for the purposes of calculating only Ms. Myers' 2006 bonus;

c.      creating a pretextual issue pertaining to Ms. Myers' "behavior" as a basis for the unfavorable review she received in the first quarter of 2007;

d.      removing Ms. Myers from her position as the WAF Book Leader;

e.      demanding that Ms. Myers repatriate back to the United Kingdom, to take at best a lower level position, before the end of Ms. Myers' 2007 Performance Contract;

f.      being frozen out of the opportunity to earn a bonus through at least December of 2007;

g.      refusing to pay Ms. Myers the amount of bonus monies retained by Defendants which totaled approximately $2.1 million even though Defendants had paid out the retained bonus monies to males despite them having official, documented "behavior" issues;

h.      having Ms. Myers' reputation ruined within the BP organization, and potentially in her chosen field of profession;

i.      forcing Ms. Myers to be physically escorted out of the BP office building following the July 10, 2007 meeting;

j.      refusing to pay Ms. Myers $776,720 of her bonus based on her 2006 performance;

k.      refusing to pay Ms. Myers the bonus she earned during the first half of 2007 and would have continued to earn through 2007;

l.      refusing to pay Ms. Myers for accrued bonuses earned in 2005 and 2006 that Defendants withheld as part its retention program, totaling approximately $2.1 million dollars.

m.      treating male employees similarly situated to Ms. Myers, substantially differently.

## ANSWER:

Defendants deny the allegations contained in Paragraph 71.

## COMPLAINT ¶ 72:

Plaintiff, Alison Myers respectfully requests the following relief:

a.    actual damages, for back pay and front pay, in an amount to be proven at trial;

b.    compensatory damages in an amount to be proven at trial;

c.    punitive damages in the amount of $25,000,000.00 given Defendants' intentional and willful conduct;

d.    reasonable attorney's fees and costs for the prosecution of this action;

e.    and such further relief as the Court deems appropriate and just.

**ANSWER:**

Defendants deny that Plaintiff is entitled to any relief.

**COUNT II**
**RETALIATION IN VIOLATION OF TITLE VII**
**OF THE CIVIL RIGHTS ACT OF 1964—29 U.S.C. §2000e, *et seq*.**

**COMPLAINT ¶ 73:**

Ms. Myers adopts and incorporates by reference all allegations contained in ¶¶ 1-72 as if set forth herein.

**ANSWER:**

Defendants restate and reallege their answers to Paragraphs 1-72 as if set forth herein.

**COMPLAINT ¶ 74:**

Ms. Myers engaged in statutorily protected speech by questioning, opposing, and complaining of Defendants' compensation discrimination against her as the only female on the U.S. WAF Team.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 74.

**COMPLAINT ¶ 75:**

Ms. Myers questioned and complained specifically of the double standard by which Defendants retroactively changed the WAF Book's performance benchmarks only for the purpose of calculating Ms. Myers' 2006 bonus while not changing the benchmarks, and consequently the WAF Book's total 2006 performance total, for any other fixed term contract traders on the WAF Bench.

**ANSWER:**

Defendants admit that Plaintiff complained about the change in the WAF Book's performance benchmarks and her 2006 bonus. Defendants further admit that Plaintiff complained that other traders on the WAF Book were not affected by the change. Defendants deny the remaining allegations contained in Paragraph 75.

**COMPLAINT ¶ 76:**

As a direct result of Ms. Myers' opposition to Defendants' discriminatory practices, Ms. Myers suffered adverse employment actions including, but not limited to, being forcefully escorted from Defendants' office, being forced to go on garden leave, being ordered to repatriate before her 2007 Performance Contract expired, and being frozen out of the opportunity to earn a substantial bonus for 2007.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 76.

**COMPLAINT ¶ 77:**

Ms. Myers' protected speech was a substantial or motivating factor behind Defendants' adverse employment actions against Ms. Myers, evidenced in part by the following:

a.   *Suspicious Timing.* Only one month elapsed from when Ms. Myers' [sic] questioned the retroactive benchmark change to when Ms. Myers received a negative review citing her "behavior" issues, which included as a behavior issue Ms. Myers' challenge to her 2006 bonus calculation, although no mention of her "behavior" issues were mentioned only a few weeks earlier when her 2007 Performance Contract was renegotiated. Less than four months elapsed between Ms. Myers challenging Defendants' retroactive benchmark change and when Ms. Myers was placed on garden leave, ordered to repatriate, and frozen out of any opportunity to earn bonus for 2007.

b.   *Unusual Circumstances.* In the nine years Ms. Myers worked in the BP organization and Defendants as a trader she only received two reviews, neither of which included negative feedback pertaining to behavior or anything else but instead praised her consistent, exemplary performance. Yet within weeks of Ms. Myers questioning Defendants' retroactive change in the performance benchmarks for the WAF Book for the purposes of calculating her bonus, Defendants decided to conduct a performance review of Ms. Myers. This negative review was diametrically opposed to Defendants' representations to Ms. Myers just a few weeks earlier when it negotiated Ms. Myers' 2007 Performance Contract.

      c.     *Motivating Factor.*  Defendants' sudden urge to review Ms. Myers' performance in April of 2007 was a pretext and the results were fabricated to generate the desired result, an overwhelmingly negative review.  The pretextual review specifically critiqued Ms. Myers for questioning Defendants' retroactive benchmark changes and discriminatory application of the benchmark changes and cited Ms. Myers' challenges to this discriminatory practice as an example of her "behavior problems".

**ANSWER:**

Defendants deny the allegations contained in Paragraph 77.

**COMPLAINT ¶ 78:**

Plaintiff, Alison Myers respectfully requests the following relief:

      a.     actual damages, for back pay and front pay, in an amount to be determined at trial;

      b.     compensatory damages in an amount to be determined at trial;

      c.     punitive damages in the amount of $25,000,000.00 given Defendants' intentional and willful conduct;

      d.     reasonable attorney's fees and costs for the prosecution of this action;

      e.     and such further relief as the Court deems appropriate and just.

**ANSWER:**

Defendants deny that Plaintiff is entitled to any relief.

**COUNT III**
**VIOLATION OF THE EQUAL PAY ACT OF 1963—29 U.S.C. §206(d)**

**COMPLAINT ¶ 79:**

Ms. Myers adopts and incorporates by reference all allegations contained in ¶¶ 1-78 as if set forth herein.

**ANSWER:**

Defendants restate and reallege their answers to Paragraphs 1-78 as if set forth herein.

**COMPLAINT ¶ 80:**

The Equal Pay Act ("EPA") prohibits an employer from, among other things, discriminating "between employees on the basis of sex by paying wages to employees ... at a rate

less than the rate at which he pays to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. §206(d)(1).

**ANSWER:**

Defendants admit the allegations contained in Paragraph 80.

**COMPLAINT ¶ 81:**

Defendants qualify as "employers" for purposes of an Equal Pay Act claim.

**ANSWER:**

Defendants admit the allegations contained in Paragraph 81.

**COMPLAINT ¶ 82:**

Ms. Myers' position as the WAF Book Leader was qualitatively identical to the other male Book Leaders in the Warrenville Illinois office, and in the larger BP organization, because it required equal work, equal skill, equal effort, and equal responsibility, and was performed under similar working conditions.  All the Book Leaders were fairly equal based on their overall skills, efforts, responsibilities, and training.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 82.

**COMPLAINT ¶ 83:**

On information and belief, the male Book Leaders, although equals in all other respects, received higher compensation in terms of their commission rates, for equal work.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 83.

**COMPLAINT ¶ 84:**

On information and belief, male Book Leaders employed by Defendants were paid substantially higher base pays and commission rates than Ms. Myers for their work on other Books that were neither qualitatively or quantitatively different than Ms. Myers' WAF Book.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 84.

**COMPLAINT ¶ 85:**

On information and belief, Ms. Myers' male predecessors who filled the WAF Book Leader position received higher compensation and commissions despite the fact that the WAF Book's performance was significantly lower and the team was smaller.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the meaning of Plaintiff's "male predecessors." Defendants deny the remaining allegations contained in Paragraph 85.

**COMPLAINT ¶ 86:**

On information and belief, Ms. Myers' immediate predecessor as the WAF Book Leader earned a higher commission rate than Ms. Myers despite Ms. Myers more than quadrupling the WAF Book's performance over the best efforts of her predecessor. Ms. Myers was paid less even though she was managing a bigger team, five people as opposed to the three people her predecessor managed.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 86.

**COMPLAINT ¶ 87:**

On information and belief Defendants employed no seniority system at the time that would account for the discrepancies in compensation between Ms. Myers and the male Book Leaders, nor between Ms. Myers and her predecessors.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 87.

**COMPLAINT ¶ 88:**

On information and belief Defendants employed no merit system at the time that would account for the discrepancies in compensation between Ms. Myers and the male Book Leaders, nor between Ms. Myers and her predecessors.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 88.

**COMPLAINT ¶ 89:**

On information and belief Defendants employed no system at the time that measured earnings by quantity or quality of production that would account for the discrepancies in compensation between Ms. Myers and the male Book Leaders, nor between Ms. Myers and her predecessors.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 89.

**COMPLAINT ¶ 90:**

Defendants employed no differentials at the time, based on a factor other than sex.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 90.

**COMPLAINT ¶ 91:**

Plaintiff, Alison Myers respectfully requests the following relief:

a.    actual damages, for back pay and front pay, in an amount to be proven at trial;

b.    compensatory damages in an amount of to be proven at trial;

c.    punitive damages in the amount of no less than $25,000,000.00 given Defendant's intentional and willful conduct;

d.    reasonable attorney's fees and costs for the prosecution of this action;

e.    any and all further relief as the Court deems appropriate and just.

**ANSWER:**

Defendants deny that Plaintiff is entitled to any relief.

**COUNT IV**
**BREACH OF CONTRACT**
**(2007 Performance Contract)**

**COMPLAINT ¶ 92:**

Ms. Myers adopts and incorporates by reference all allegations contained in ¶¶ 1-90 as if set forth herein.

**ANSWER:**

Defendants restate and reallege their answers to Paragraphs 1-90 as if set forth herein.

**COMPLAINT ¶ 93:**

The 2007 Performance Contract between Defendants and Ms. Myers was a valid contract. The 2007 Performance Contract was effective between January 1, 2007 and December 31, 2007.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 93.

**COMPLAINT ¶ 94:**

Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

**ANSWER:**

Defendants admit the allegations contained in Paragraph 94.

**COMPLAINT ¶ 95:**

Until she was forced to leave the Defendants' premises on July 10, 2007, Ms. Myers performed all obligations she owed under her 2007 Performance Agreement with Defendants. Ms. Myers remained ready [sic] willing and able to perform all of her obligations under the 2007 Performance Contract but was precluded from doing so because Defendants breached their obligations under the 2007 Performance Contract.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 95.

**COMPLAINT ¶ 96:**

Defendants' breached the terms of the 2007 Performance Contract by placing Ms. Myers on "garden leave" when the contract obligates Defendants to allow Ms. Myers to perform as a trader through the end of the 2007 calendar year.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 96.

**COMPLAINT ¶ 97:**

Moreover, there was a course of performance at all times relevant to this lawsuit at Defendants that all Performance Contracts would be allowed to run their full term notwithstanding any written policies, agreements or directives to the contrary.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 97.

**COMPLAINT ¶ 98:**

Defendants breached the terms of the contract by ordering Ms. Myers to repatriate before her 2007 Performance Contract expired on December 31, 2007.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 98.

**COMPLAINT ¶ 99:**

Defendants further breached the terms of the 2007 Performance Contract by officially terminating Ms. Myers on October 18, 2007 before the contract expired.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 99.

**COMPLAINT ¶ 100:**

Defendants further breached the terms of the 2007 Performance Contract by not paying Ms. Myers the full compensation, including Ms. Myers' salary and annual bonus, she was owed under the terms of the Performance Contract.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 100.

**COMPLAINT ¶ 101:**

Ms. Myers respectfully requests the Court to award her actual damages in an amount to be determined at trial and any and all further relief as the Court deems appropriate and just.

**ANSWER:**

Defendants deny that Plaintiff is entitled to any relief.

**COUNT V**
**BREACH OF CONTRACT**
**(2006 Performance Contract)**

## COMPLAINT ¶ 102:

Ms. Myers adopts and incorporates by reference all allegations contained in ¶¶ 1-101 as if set forth herein.

## ANSWER:

Defendants restate and reallege their answers to Paragraphs 1-101 as if set forth herein.

## COMPLAINT ¶ 103:

The 2006 Performance Contract between Defendants and Ms. Myers was a valid contract. The 2006 Performance Contract was effective between January 1, 2006 and December 31, 2006.

## ANSWER:

Defendants deny the allegations contained in Paragraph 103.

## COMPLAINT ¶ 104:

Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

## ANSWER:

Defendants admit the allegations contained in Paragraph 104.

## COMPLAINT ¶ 105:

Ms. Myers fully performed all of her obligations under the 2006 Performance Contract.

## ANSWER:

Defendants deny the allegations contained in Paragraph 105.

## COMPLAINT ¶ 106:

The 2006 Performance Contract provided that Ms. Myers' 2006 target bonus would be "paid out based mainly on the performance of the relevant book" in the amount of $2.33 million. Further, the 2006 Performance Contract provided that Ms. Myers' target bonus "paid out based on individual performance" would be $1.16 million.

## ANSWER:

Defendants deny the allegations contained in Paragraph 106.

**COMPLAINT ¶ 107:**

Based on the performance of the 2006 WAF Book, and the terms of the 2006 Performance Contract, Ms. Myers earned a bonus of approximately $5.5 million.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 107.

**COMPLAINT ¶ 108:**

Defendants breached the terms of the 2006 Performance Contract by deducting $776,720 from Ms. Myers [sic] 2006 bonus payout. Defendants never discussed the deduction with Ms. Myers, obtained her consent to the reduction or explained its reasoning to Ms. Myers in advance. Ms. Myers only became aware of the deduction in 2007 at the time the 2006 bonus was scheduled to be paid out.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 108.

**COMPLAINT ¶ 109:**

Because of Defendants' breach of the 2006 Performance Contract Ms. Myers suffered damages in the amount of $776,204.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 109.

**COMPLAINT ¶ 110:**

Under the terms of the 2006 Performance Contract and its accompanying bonus retention program, Ms. Myers was entitled to receive payouts of $400,000 in 2008 and 2009 and a payout of $700,000 in 2010.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 110.

**COMPLAINT ¶ 111:**

Ms. Myers respectfully requests the Court to award her actual damages in the amount of $2,276,204 and any and all further relief as the Court deems appropriate and just.

**ANSWER:**

Defendants deny that Plaintiff is entitled to any relief.

## COUNT VI
## BREACH OF CONTRACT
### (2005 Performance Contract)

**COMPLAINT ¶ 112:**

Ms. Myers adopts and incorporates by reference all allegations contained in ¶¶ 1-111 as if set forth herein.

**ANSWER:**

Defendants restate and reallege their answers to Paragraphs 1-111 as if set forth herein.

**COMPLAINT ¶ 113:**

The 2005 Performance Contract between Defendants and Ms. Myers was a valid contract. The 2005 Performance Contract was effective between January 1, 2005 and December 31, 2005.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 113.

**COMPLAINT ¶ 114:**

Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

**ANSWER:**

Defendants admit the allegations contained in Paragraph 114.

**COMPLAINT ¶ 115:**

Ms. Myers fully performed her obligations under the 2005 Performance Contract and at the time of her termination from Defendants Ms. Myers was ready, willing and able to continue working for Defendants.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 115.

**COMPLAINT ¶ 116:**

For the performance year 2005, Ms. Myers earned a bonus of $2,658,785.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 116.

**COMPLAINT ¶ 117:**

Pursuant to bonus retention program, Ms. Myers was entitled to receive payouts of $219,350 in 2007 and 2008 and a payout of $385,524 in 2009.  Ms. Myers only received the $219,350 amount from 2007.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 117.

**COMPLAINT ¶ 118:**

Defendants breached the terms of the 2005 Performance Contract by refusing to pay to Ms. Myers the amounts retained from her 2005 performance bonus.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 118.

**COMPLAINT ¶ 119:**

Because of Defendants' breach of the 2005 Performance Contract Ms. Myers suffered damages in the amount of $604,874.

**ANSWER:**

Defendants deny the allegations contained in Paragraph 119.

**COMPLAINT ¶ 120:**

Ms. Myers respectfully requests the Court to award her actual damages in the amount of $604,874 and any and all such further relief as the Court deems appropriate and just.

**ANSWER:**

Defendants deny that Plaintiff is entitled to any relief.

## AFFIRMATIVE DEFENSES

1.      Plaintiff's Title VII claims are barred to the extent that they are not set forth in her EEOC charge.

2.      To the extent that Plaintiff has failed to meet Title VII's statutory and/or jurisdictional prerequisites to suit and/or to the extent that she seeks to base her claims on events occurring outside the applicable statute of limitations, such claim is barred.

3.      To the extent that Plaintiff seeks to base her Equal Pay Act claim on events occurring outside the applicable statute of limitations, such claim is barred.

4.      To the extent Plaintiff failed to mitigate her damages, she is barred from recovery.

5.      To the extent Plaintiff is requesting punitive damages, such damages are unavailable by Defendants' good-faith efforts to comply with all applicable anti-discrimination laws and the Equal Pay Act.

6.      Defendants are not liable on Plaintiff's claims under the Equal Pay Act as they determine employee compensation based on a merit system, a system measuring earnings by quantity or quality of production, or on differentials based upon any other factor other than sex.

Defendants BP America Inc. and BP Products North America Inc. request that the Court enter judgment dismissing Plaintiff's Complaint in its entirety with prejudice and award Defendants their costs, attorneys' fees, and any such other relief to which they may be entitled under law or statute or as the Court may deem just and proper.


**August 5, 2008**                                    Respectfully submitted,

                                                       BP AMERICA INC. and
                                                       BP PRODUCTS NORTH AMERICA INC.


                                                       By /s/ Michelle K. Mellinger
                                                           One of Their Attorneys

Thomas J. Piskorski
Michelle K. Mellinger
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois  60603
(312) 460-5000 (telephone)
(312) 460-7000 (facsimile)

William R. Malone (motion for leave to appear *pro hac vice* pending)
BP America Inc.
501 Westlake Park Blvd.
Houston, TX  77079
(281) 366-1042 (telephone)
(281) 366-2033 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney of record certifies that she caused a true and correct copy of the foregoing DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT to be served upon the following counsel of record via electronic filing CM/ECF this 5th day of August, 2008:

> Joseph L. Kish
> Trisha M. Cole
> Synergy Law Group, L.L.C.
> 730 West Randolph St., 6th Floor
> Chicago, Illinois 60661

> <u>/s/ Michelle K. Mellinger</u>
> Michelle K. Mellinger

CH2 20218596.1